28906. MOORE *v.* THE STATE.

Decided June 26, 1941.

*J. A. Beazley,* for plaintiff in error.

*J. Cecil Davis, solicitor-general,* contra.

GARDNER, J. The defendant was convicted of perjury. She filed a motion for new trial on the usual general grounds and afterwards filed an amendment setting up eight additional grounds. The court overruled the motion as amended, and on this judgment the defendant assigns error. A demurrer had been filed to the indictment, which was overruled. To this judgment exceptions pendente lite were filed, and error is assigned thereon. We will deal first with this assignment.

The material portions of the indictment are that the defendant "did unlawfully, wilfully, knowingly, absolutely, and falsely swear without laying her hand on the Holy Evangelist of Almighty God, in a matter material to the issue and point in question, and to whom a lawful oath had been administered by a person having authority to administer the same, to wit: J. Cecil Davis, solicitor-general of the Toombs judicial circuit, in a judicial proceeding in the superior court of Taliaferro County, Georgia, to wit: during the trial of a case in said court then and there pending, to wit, the case of the State of Georgia against John Sherman Harris, the same being an indictment charging the said John Sherman Harris with the murder of Chelian Chalker in Glascock County, Georgia, on December 17, 1938, the said Hattie Moore being then and there a witness for the State after having been sworn as a witness as aforesaid, to wit: 'The morning before Chelian Chalker was killed Miss Emma, John Sherman, and Roger and myself ate breakfast. Roger Harris came before day but I did not see or hear anybody come with him. When I got up and cooked breakfast I did not see anybody around Mrs. Harris's home except Roger. I did not see anybody there that morning. I did not see anybody that went hunting. Only John Sherman Harris, Miss Emma, Mr. Roger, and myself ate breakfast. No one else ate there at all. I am talking about the Saturday morning Mr. Chelian Chalker was killed. Nobody but Miss Emma, John Sherman, and myself ate dinner. Lamar Addison went hunting by himself. Miss Emma, Mr. John, and myself ate supper. No one else that day was at the house except Miss Emma and John Sherman. I did not find out that

Chelian Chalker had been killed until the morning when I got up.' When in truth and in fact on the morning before Chelian Chalker was killed, Jim Davis came to the Harris home, ate breakfast with Mrs. Emma Harris and in the presence of Hattie Moore, staying around the Harris home and on the Harris premises all the day going hunting around the premises with Lamar Addison and Ed Hill and eating dinner at the Harris home and eating supper at the Harris home, yet the said Hattie Moore did wilfully, knowingly, and absolutely and falsely swear as above set forth; contrary to the laws of said State, the good order, peace, and dignity thereof."

The demurrer makes the following attack: "The trial in which defendant is charged with having sworn falsely was a murder trial wherein John Sherman Harris was charged with murder in Glascock County of one Chelian Chalker. . . Defendant moves to quash and dismiss the indictment against her because [it] does not state or [show] how or wherein the testimony alleged to be false was material to the case being tried, or show what the theory of the prosecution of said John Sherman Harris was, or how said alleged false testimony was or could be material to the issue. Said indictment is void. It does not charge an offense under laws of Georgia." It will thus be seen that the gravaman of the demurrer is to the effect that since the words of the testimony alleged do not import materiality, a general allegation that they are material is insufficient in pleading, as a matter of law, to charge perjury, but the allegations should go further and set out "how and wherein" the testimony is material. As to this question there are two views; first, that where the words themselves do not denote or import materiality, a general allegation of materiality, as in the case at bar, is sufficient; and second, that where the words do not themselves import or denote materiality, the allegations of the indictment must go further and aver "how and wherein" the words are material. These two views are clearly stated in 21 R. C. L. 266, 268, § 14. The first rule or view as above stated is sustained in this country by the great weight of authority. By reference to 80 A. L. R. 1443, it will be found that this first rule obtains in the United States courts, and in those of Alabama, Arkansas, California, Colorado, Florida, Illinois, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nebraska, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon,

Texas, Vermont, Virginia, Washington, West Virginia, Wyoming. In some of the jurisdictions mentioned it is held that a general averment that the false statement is material is sufficient in an indictment without setting forth the facts from which materiality appears, provided such facts alleged do not show that the false testimony was not material.

So far as we have been able to ascertain this question was first presented to the courts of our State in *Hembree* v. *State,* 52 *Ga.* 242. In this case the words themselves did not import materiality, and there was no general or other averment as to their materiality. Judge McCay, in rendering the opinion, page 245, said: "Whilst we are no friends of technical rules, there are yet limits, especially in criminal cases, beyond which it is not safe to go, and we think it must always be alleged that the words sworn were material, or they must, in the nature of them, show their own materiality. That is one of the statutory ingredients of the crime, and it can no more be dispensed with than the allegation that the words were false." We next find the question dealt with in *Johnson* v. *State,* 76 *Ga.* 790 (2), where the court quoted the allegations of the indictment, "At and upon said trial, it became and was a material question and questions and subject of inquiry whether the said Laura Johnson saw the said George Baker, the defendant in said cause, on the night near Judge Montgomery's at the time of the alleged offense . . and whether the said George Baker . . did strike her, . . and whether the said Laura Johnson had sworn before the mayor of Americus that George Baker . . had knocked her down and almost killed her," and held that these allegations on the materiality of the issue were sufficient. Next, following this same rule, we find the court expressing the same view in *King* v. *State,* 103 *Ga.* 263 (2) (30 S. E. 30), where the court held: "An indictment for perjury which alleges that certain testimony therein set forth was false, and that the same was given by the accused in a matter material to a specified issue and point in question in a described judicial proceeding, is, so far as relates to alleging the materiality of such testimony, sufficient, without stating in detail the facts showing how the same was material." Whether such ruling was obiter dictum or not, it was in line with and followed the holding in *Hembree* v. *State,* supra. See further the elaborations of Judge Fish, who rendered the opinion in the

*King* case, as set forth on page 265, as follows: "Another ground of the demurrer was, that 'the alleged false testimony was not material to any issue stated, or that could legally arise, in the suit alleged to have been on trial.' It is sufficient in an indictment for perjury to charge generally that the testimony alleged to have been false was in relation to a matter material to the point or question in issue, without setting forth in detail the facts showing how such testimony was material. . . When the record does not positively show that the testimony was immaterial, an express averment that a question was material lets in evidence to prove that it was so." See also *Goodwin* v. *State,* 118 *Ga.* 770 (2) (45 S. E. 620). In *Pope* v. *State,* 43 *Ga. App.* 175, 178 (158 S. E. 350), the court held on the same question raised before it that the demurrer was "controlled adversely to the demurrant by the following ruling in *King* v. *State,* 103 *Ga.* 263 (2) (30 S. E. 30): 'An indictment for perjury which alleges that certain testimony therein set forth was false, and that the same was given by the accused in a matter material to a specified issue and point in question in a described judicial proceeding, is, so far as relates to alleging the materiality of such testimony, sufficient, without stating in detail the facts showing how the same was material.'" Again, this court, in *Clackum* v. *State,* 55 *Ga. App.* 44 (4) (189 S. E. 397), held, Judge Guerry rendering the opinion: "An indictment alleging that certain testimony therein set forth was false, and was given by the accused in an investigation material to a specified issue or point in question in a described judicial proceeding, was sufficient as to the materiality of the testimony, without stating in detail the facts showing how it was material."

We find no decision of the Supreme Court which intimates any view other than the one that a general averment of materiality is sufficient to sustain an indictment for perjury relatively to the allegations of the false testimony; but to the contrary all the decisions lay down the principle that it is not necessary to particularize and allege "how and wherein" the allegations of fact are material. If *Askew* v. *State,* 3 *Ga. App.* 79 (59 S. E. 311), *Herndon* v. *State,* 17 *Ga. App.* 558 (87 S. E. 812), *Marion* v. *State,* 21 *Ga. App.* 193 (94 S. E. 61), and *Stewart* v. *State,* 42 *Ga. App.* 469 (156 S. E. 643), in applying the law to their particular state of facts, express views contrariwise in holding that it is necessary to

detail the facts in order to show the "how and wherein" of the materiality when the allegations of fact do not within themselves denote or import materiality, they must yield in their force to the rulings of the Supreme Court hereinabove cited.

In conclusion of this division of our opinion we express this as the law of this State: first, when the words of the testimony themselves taken in connection with the whole allegations of the indictment or accusation or information as provided by law denote or import materiality, it is unnecessary to allege generally or otherwise their materiality; and, second, if the words of the alleged false testimony do not within and of themselves, taken in connection with the whole allegations of the indictment, or accusation or information, denote or import materiality, a general averment of materiality is sufficient in law to admit testimony for the purpose of showing their materiality; conditioned always in either event, whether the materiality is alleged in general terms or otherwise, that, if the indictment or accusation or information shows under the whole allegations that the allegedly false testimony was not material, then the indictment or accusation or information does not allege the crime of perjury.

This brings us to the proposition whether the evidence in the case at bar proved that the allegations of the indictment were material in the trial of John Sherman Harris for murder for the killing of Chelian Chalker in Taliaferro County. The indictment charged the truth to be that Jim Davis, on the morning before Chalker was killed, went to the Harris house, ate breakfast with Mrs. Emma Harris and in the presence of Hattie Moore, stayed around the Harris home and on the Harris premises, all the day; went hunting around the premises with Lamar Addison and Ed Hill, and ate dinner and supper there. The indictment further alleged in substance that Hattie Moore, knowing this to be the truth, knowingly, wilfully, and falsely swore that she did not see Jim Davis that day. The theory of the State was, from the record, that John Sherman Harris, the son of Emma Harris, and who was living at the Harris home, conspired with Jim Davis, and procured him to come to the Davis home on the day in question for the purpose of conspiring with John Sherman Harris to rob and kill Chelian Chalker. Chalker was killed that night while driving near the Harris home, and there was evidence from which inferences could

be deduced that both Jim Davis and John Sherman Harris participated in the homicide, and that conferences were had between the conspirators and the mother of Harris at the Harris home. There was evidence to the effect that Jim Davis was the "strange man" at the Harris home on the day in question; that Hattie Moore cooked for and served him there, and knew how and when Jim Davis was spirited away in the nighttime from the Harris home, after the homicide.

We think that on the trial of John Sherman Harris for the murder of Chalker the facts related above as to Jim Davis were material to the issue. There was abundant evidence to substantiate the fact that Jim Davis was at the Harris home and did the things while there as alleged in the indictment. This was testified to by Ed Hill and Jim Davis in the trial of Hattie Moore for perjury.

The State introduced in evidence a transcript of the testimony of Hattie Moore given in the trial of John Sherman Harris for the murder of Chelian Chalker, in Glascock County. In this trial Hattie Moore testified that Jim Davis was at the Harris home and did the things as alleged in the bill of indictment and that Harris was convicted. A change of venue was granted and Harris was put on trial in Taliaferro County. When called as a witness in Taliaferro County Hattie Moore repudiated the testimony she had given on the trial in Glascock County. The State also introduced an affidavit given by Hattie Moore while in jail in Augusta. In this affidavit she substantiated the allegations of the indictment that Jim Davis was at the Harris home and did the things as alleged in the indictment.

Grounds 2, 4, 7, and 8 of the amended motion complain that the court erred in admitting a transcript of the testimony of Hattie Moore in the Glascock County trial, as well as her affidavit given while confined in the Richmond County jail before either of the trials of John Sherman Harris. The objections were that the testimony was immaterial and irrelevant. There is no merit in either of these assignments. The statements were in the nature of confessions and were admissible.

There is no merit in assignments 5 and 6. The evidence of sheriff Kitchens of Glascock County and of sheriff Hogan of Warren County was admissible, and was not subject to the objection of being immaterial and irrelevant.

222

Ground 3 (2) complains that the court committed error in a remark, to wit: "I think that is the gist of the case," in response to the objection of the defendant that the transcript of the testimony of Hattie Moore in Glascock County was irrelevant and immaterial. With this testimony the State was endeavoring to show that the truth of the transaction was as alleged in the indictment, and that Hattie Moore had testified to this, as being the truth, in Glascock County. The State was obliged to prove, first, what the truth of the transaction was in order to prove the falsity of the testimony given in the trial in Taliaferro County. While it may be true, literally, that the words used were inapt, from the whole facts of the case, we do not think the jury was misled thereby. The judge instructed the jury that the State must prove that the testimony given by Hattie Moore in Taliaferro County was false. We find no reversible error.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*